# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## No. 24-12167

## RACHEAL GANTT,

### Appellee,

### v.

## MONICA EVERETT

### Appellant.

**On Appeal from the U.S. District Court for the
Northern District of Alabama, Southern Division
United States District Judge Hon. David R. Proctor
No. 2:23-cv-00648-RDP**

## BRIEF OF APPELLANT MONICA EVERETT

JOHN G. DANA, Esq.
JONATHAN D. GILBERT, Esq.
ROBERT J. SEWELL, Esq.
CLAYTON M. HUGHES, Esq.
GORDON, DANA & GILMORE, LLC
600 University Park Place, Suite 100
Birmingham, Alabama 35209
Telephone: (205) 874-7950
Facsimile:  (205) 874-7960
jdana@gattorney.com
jdgilbert@gattorney.com
jsewell@gattorney.com
chughes@gattorney.com
*Attorneys for Appellants*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, undersigned counsel certifies that the following persons have an interest in the outcome of this matter:

1.    Dana, John G.

2.    Everett, Monica

3.    Gantt, Racheal

4.    Gilbert, Jonathan D.

5.    Goldfarb, Jon C.

6.    Gordon, Bruce L.

7.    Hughes, Clayton M.

8.    Jefferson County Sheriff's Office

9.    Malmat, Christina

10.    Pettway, Mark (Sheriff of Jefferson County, Alabama)

11.    Proctor, Hon. David R. Proctor

12.    Sewell, Robert J.

13.    Smith, L. William

14.    There is no stock ticker symbol to be entered because no parties to this lawsuit are publicly traded corporations.

/s/ Robert J. Sewell
OF COUNSEL

C1- of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Monica Everett ("Deputy Everett" or "Appellant") does not request oral argument because this Court's precedent on qualified immunity at summary judgment is well settled and applicable to the pleadings and facts herein. As a result, Appellant believes that oral argument is not necessary. *See* Fed. R. App. P. 34(a); 11th Cir. R. 38-1(c). However, should this Court deem oral argument helpful to its resolution of this appeal, Appellant is ready and willing to provide the same.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST PERSONS AND CORPORATE DISCLOSURE STATEMENT ……………………………………………………….……..C-1

STATEMENT REGARDING ORAL ARGUMENT……………………………….i

TABLE OF CONTENTS……………………………………………………....ii

TABLE OF AUTHORITIES……………………………………………….....iii

STATEMENT OF JURISDICTION……………………………………….....1

STATEMENT OF ISSUES…………………………………………………....1

STATEMENT OF THE CASE…………………………………………….....2

    A. Procedural History ……………………………………………….....2

    B. Statement of Facts ……………………………………………….....3

STANDARD OF REVIEW……………………………………………….....8

SUMMARY OF THE ARGUMENT………………………………………....8

ARGUMENT…………………………………………………………….........9

    I.    Deputy Everett is entitled to qualified immunity for her discretionary actions on February 8, 2023. ……………………………………….....10

        A.    Appellee failed to show any constitutional violation occurred.11

        B.    Deputy Everett did not violate "clearly established" law……..18

CONCLUSION…………………………………………………………….27

CERTIFICATE OF COMPLIANCE……………………………………….....28

CERTIFICATE OF SERVICE……………………………………………….....28

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

*Allen v Freeman,*
   No. CV 110-022, 2013 U.S. Dist. LEXIS 93685 (S. D. Ga. July 3, 2013) . . 25

*Andrews v. Wayne Cnty., Mich.,*
   957 F.3d 714 (6th Cir. 2020) . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ashcroft v al-Kidd,*
   563 U.S. 731 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ashcroft v. Iqbal,*
   556 U.S. at 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Barnett v. MacAurthur,*
   715 F. App'x 894 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Belcher v. City of Foley, Ala.,*
   30 F.3d 1390 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . .. . . . . 12

*Brabbit v. Capra,*
   59 F.4th 349 (8th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 21

*Brown v. Hughes,*
   894 F.2d 1533 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . .
16

*Cf. Johnson v. Breeden,*
   280 F.3d 1308 (11th Cir. 2002) . . ... . . . . . . . . . . . . . . . . . . . . . . . 12

*Cf. Gooden v. Mormon,*
   524 Fed. Appx. 593 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 16

*Chaparro v. Carnival Corp.,*
   693 F.3d 1333 (11th Cir. 2012) . . ... . . . . . . . . . . . . . . . . . . . . . . . 21

*Coffin v. Brandau,*
   642 F.3d 999 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cole v. Jones,*
    No. 2:21-CV-26-RAH-KFP, 2024 U.S. Dist. LEXIS 44456 (M.D. Ala. Mar.
    13, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24, 25

*Cook v Sheriff of Monroe County,*
    402 F.3d 1092 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cottone v. Jenne,*
    326 F.3d 1352 (11th Cir. 2003) . . . . . . . .. . . . . . . . . . . . . . . . . 10

*Cox v Glanz,*
    800 F.3d 1231 (10th Cir. 2015) . . . . . . . . . . . . .. . . . . . . . . . . . 22

*Davis v. Scherer,*
    468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*DePaola v. Clarke,*
    884 F.3d 481 (4th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dolihite v. Maughon by and Through Videon,*
    74 f.3d 1027 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Farmer v. Brennan,*
    511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Freeman v. Lebedovych,*
    186 F App'x 943 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . .12, 13

*Gaines v. Wardynski,*
    871 F.3d 1203 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Garcia v. Casey,*
    75 F.4th 1176 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Garczynski v. Bradshaw,*
    573 F.3d 1158 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garner v. Jamerson,*
    No. 23-10130, U.S. App. LEXIS 19858 (11th Cir. Aug. 2, 2023). . . . . . 12, 17

iv

*Greason v Kemp,*
    891 F.2d 829 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . 25

*Greffey v. State of Ala. Dep't of Corr.,*
    996 F. Supp. 1368 (N.D. Ala. 1998) . . . . . . . . . . . . . . . . . . . .15

*Griesel v. Hamlin,*
    963 F.2d 338 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . .8

*Harlow v Fitzgerald,*
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hobson v. Bibb Cnty., Ala, Comm'n,*
    No. 7:07-CV-00502-LSC, 2008 U.S. District LEXIS 143555, at *26 (N.D.
    Ala. Mar. 5, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Holloman ex rel. Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) . . . . . . . . . . . . . . . 10, 11, 18

*Hope v. Pelzer,*
    536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jackson v West,*
    787 F.3d 1345 (11th Cir. 2015) . . . . . . . . . . . . . . . 17, 18

*Jacobs v. Ford,*
    No. 21-13411, 2022 U.S. App. LEXIS 10265 (11th Cir. Apr. 15, 2022) . . . .20

*Jenkins by Hall v. Talladega City, Ala., Bd. of Educ.*
    115 F.3d 821 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 19

*Marsh v. Butler County, Ala.,*
    268 F.3d 1014 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . .10

*Mitchell v Forsyth*
    472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . .1

*Priester v. City of Riviera Beach, Fla.,*
    208 F.3d 919 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 19

*Post v. City of Fort Lauderdale, Fla.,*
    7 F.3d 1552 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Reichle v. Howards,*
    566 U.S. 658 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rioux v. City of Atlanta, Ga.,*
    520 F.3d 1269 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Salter v. Mitchell,*
    711 F. App'x 530 (11th Cir.2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Schmeltz v. Monroe Cnty.,*
    954 F.2d 1540 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Scott v. Harris,*
    550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Snow v City of Citronelle, Ala.,*
    420 F.3d 1262 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

*Terrell v. Smith,*
    668 F.3d 1244 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Turner v. Phillips,*
    547 F. Supp. 3d 1188 (N.D. Ala. 2021) . . . . . . . . . . . . . . . . . . . . . . . 24

*Wade v. McDade,*
    No. 21-14275, 2024 U.S. App. LEXIS 16880 (11th Cir. July 10, 2024). . . 13, 14, 17

## **Statutes:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2, 3

**<u>Rules:</u>**

Fed. R. App. P. 28(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 32(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11th Cir. R. 28-1(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11th Cir. R. 31-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

## STATEMENT OF JURISDICTION

Pursuant Federal Rule of Appellate Procedure 28(a)(4) and Eleventh Circuit Rule 28-1(g), Appellant states as follows:

Appellee brought the underlying suit pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of Alabama; thus the District Court had federal question jurisdiction. *See* 28 U.S.C. § 1331. This is a direct appeal from the District Court's denial of summary judgment and denial of qualified immunity in the underlying action, and this Court has appellate jurisdiction of this "appealable final decision." *See* 28 U.S.C. § 1291; *Garcia v. Casey*, 75 F.4th 1176, 1184 (11th Cir. 2023) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). On July 11, 2024, the Court set the due date for Appellant's brief for August 12, 2024, and on August 5, 2024, the Court granted an extension until September 11, 2024. Appellant is filing this brief on the deadline set by the Court.

## STATEMENT OF THE ISSUE

Did the District Court commit reversible error by denying Appellant Deputy Monica Everett's motion for summary judgment on the grounds that Deputy Everett was not entitled to qualified immunity on Appellee's deliberate indifference claim?

## STATEMENT OF THE CASE

A.  **Procedural History**

On May 22, 2023, Appellee filed her original Complaint asserting a single cause of action against Deputy Everett under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (the "Complaint"). [Doc. 1].[1] On August 11, 2023, Deputy Everett moved to dismiss the Complaint. [Docs. 12–13]. Appellee responded, and Deputy Everett replied. [Docs. 19–20]. On October 4, 2023, the District Court entered a Text Order Administratively Terminating Deputy Everett's Motion to Dismiss. [Doc. 25]. On October 5, 2023, Deputy Everett filed her Motion to Alter or Amend the October 4, 2023 Text Order. [Doc. 26]. On October 10, 2023, the District Court entered a Text Order denying Deputy Everett's Motion to Alter or Amend the October 4, 2023, Text Order, allowing discovery and dispositive motions "on the issue of qualified immunity." [Doc. 28].

On October 19, 2023, Deputy Everett filed her Answer to Appellee's original Complaint. [Doc. 29].

On January 17, 2024, Deputy Everett filed her Motion for Summary Judgment, [Doc. 34], her Evidentiary Submission in Support of Defendants' Motion for Summary Judgment, [Docs. 35, 35-1–35-8], and her Memorandum of Law in

---

[1] Unless otherwise noted, Appellant cites to the CM/ECF document numbers from the District Court by referring to "Doc. #."

Support of Motion for Summary Judgment. [Doc. 36] (Docs. 34–36 are referred to as "Deputy Everett's MSJ"). Appellee then filed her Evidentiary Submissions, [Docs. 39, 39-1–39-10], and her Opposition to Deputy Everett's Motion to Dismiss. [Doc. 41] (Docs. 39–41 are referred to as "Appellee's MSJ Opposition"). Deputy Everett then filed her Reply Brief to Appellee's Opposition to Defendant's Motion to Dismiss. [Doc. 43].

On June 17, 2024, the District Court entered its Memorandum Opinion denying, in part, Appellant's Motion for Summary Judgment based on qualified immunity. [Doc. 44] (the "Opinion"). On the same day, the District Court then issued its order denying Appellant's requested summary judgment on the basis of qualified immunity. [Doc. 45] (the "Order"). Appellant's timely filed her notice of appeal on July 3, 2024. [Doc. 47] (the "Notice of Appeal"). On July 3, Deputy Everett filed an Unopposed Motion to Stay Proceedings Pending Appeal, and the District Court granted the motion. [Docs. 50, 51]. This appeal follows.

**B.    Statement of Facts**

**1.    Plaintiff's Alleged Claims**

Plaintiff alleges a single cause of action against Deputy Everett pursuant to the Fourteenth Amendment via 42 USC §1983 for Plaintiff's "attempt to take her own life while on suicide watch if presented with the opportunity to do so." (Doc. 1 at ¶¶ 31–34); *see also* (Doc. 19 at 3–4).

3

### 2.    Plaintiff's Booking and Housing Classification on February 8, 2023

Plaintiff was booked into the Jefferson County Jail on February 4, 2023, and placed on suicide watch prior to February 8, 2023. (Doc. 35-4 at 113:3-12). On February 8, 2023, Plaintiff was housed in cell A11 in A-Block the fifth floor of the Jefferson County Jail. (Doc. 35-3 at 28:21–29:18). That day, Plaintiff told Deputy Niyasmine Morgan ("Deputy Morgan") that she (Plaintiff) was refusing to take her detox medications. (Doc. 35-4 at 28:1-23, 29:10-19).

### 3.    Plaintiff Never Showed Any Signs of Distress on February 8, 2023

Deputy Morgan and Deputy Jamie Yunker ("Deputy Yunker") (not Deputy Everett) were assigned as deputies on the fifth floor of the Jefferson County Jail on February 8, 2023, for the day shift. (Doc. 35-6 at 12:11–23). Control Room Operator Jamesanna Lovell ("CRO Lovell") was the control room operator on the fifth floor for the morning shift that day. (Doc. 35-5 at 8:22–9:20).

On February 8, 2023, Plaintiff never communicated any issues related to her head injuries with the deputies and control room officers in the control room prior to initiating conversation with Deputy Everett. (Doc. 35-4 at 27:14–21). Deputy Morgan never saw Plaintiff hitting her head against the wall of her cell. *Id.* at 33:16–20. Deputy Yunker never heard Plaintiff complaining about hitting her head during the day shift. (Doc. 35-6 at 51:13–16, 62:20–63:3). CRO Lovell never saw Plaintiff hitting her head in the cell, and never saw Plaintiff showing any signs of distress

from within her cell. (Doc. 35-5 at 22:14–23:7). CRO Lovell never heard Plaintiff crying or screaming for help from within her cell. (Doc. 35-5 at 73:17–21).

### 4.    Deputy Everett's Duties on February 8, 2023

Deputy Everett 's shift at the Jefferson County Jail on February 8, 2023, was from 6:00 a.m. to 2:00 p.m. (Doc. 35-3 at 32:3–5). Deputy Everett was assigned to "fingerprint" job duties on the first floor of the Jefferson County Jail. (Doc. 35-3 at 35:4–20). Deputy Everett never had any interactions with Plaintiff prior to the incident on February 8, 2023. (Doc. 35-3 at 36:2–10). Deputy Everett was not responsible for watching the cameras in the control room on the fifth floor of the Jefferson County Jail that day. (Doc. 35-3 at 118:20-22); (Doc. 35-5 at 75:21–76:11). That afternoon, Deputy Everett went up to the fifth floor of the Jefferson County Jail to assist in a "shakedown" of another inmate in F-Block on the fifth floor. (Doc. 35-3 at 37:17–21); (Doc. 35-4 at 82:7–13). During the "shakedown" in F-Block, Deputy Everett escorted another inmate to A-Block for disciplinary reasons. (Doc. 35-3 at 43:4–44:6).

### 5.    Deputy Everett's Initial Interaction with Plaintiff

When Deputy Everett entered A-Block, Deputy Everett heard Plaintiff screaming and crying for help from inside cell A11. (Doc. 35-3 at 46:12–17). Deputy Everett walked over to Plaintiff's cell at or around 1:56 p.m. (Doc. 35-1 at 1:56:00

5

or 13:56:00).[2] While at the Plaintiff's cell, Deputy Everett asked Plaintiff what was wrong and Plaintiff informed Deputy Everett that she had fallen and hit her head. (Doc. 35-3 at 46:21–23). Deputy Everett learned that Plaintiff was on suicide watched when she walked up to Plaintiff's cell and saw Plaintiff in the suicide smock. *Id.* at 31:2–13. Deputy Everett asked to see Plaintiff's head and saw that there was a knot on Plaintiff's head but did not see any bleeding. *Id.* at 47:1-3.

### 6.    Deputy Everett Requests to take Plaintiff to Medical Clinic

Deputy Everett went into the control room and called the medical clinic in the jail to get authorization to take Plaintiff to the medical clinic. *Id.* at 49:17–20, 63:14–20. The medical clinic told Deputy Everett to bring the Plaintiff for attention. *Id.* at 68:11–16. Deputy Everett yelled for another deputy to grab Plaintiff a uniform and then unlocked Plaintiff's cell door from the computer in the control room. *Id.* at 71:3–9.

### 7.    Plaintiff Runs out of Cell and Jumps off Second Floor Railing

At or about 2:00:42 p.m., Plaintiff's cell door pops open after Deputy Everett opened the cell door. (Doc. 35-1 at 2:00:42 or 14:00:42). Plaintiff the had the "opportunity" to climb up the steps and jump only when her cell door popped open.

---

[2] When viewing the video record evidence, the video software may only display timestamps based on the duration of the video, but with some software it may show the actual time of day in twenty-four hour "military time," which is why Appellant is citing to both timestamp formats.

(Doc. 35-3 at 73:14–16, 74:9–11, 93:6-15, 130:12–20); (Doc. 35-4 at 28:2–6, 55:22–56:10); (Doc. 35-5 at 61:8–11). For a span of at most seven seconds, Plaintiff's door was open prior to Plaintiff running out of her cell while Deputy Everett was walking towards A-Block. (Doc. 35-3 at 189:5–11); (Doc. 35-1 at 2:00:42–2:00:49 or 14:00:42–14:00:49); (Doc. 35-2 at 2:00:42–2:00:49 or 14:00:42–14:00:49).[3] After the cell door opened, Plaintiff then ran across A-Block, up the stairs and jumped from the second floor. (Doc. 35-3 at 76:19–78:10); (Doc. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08). Plaintiff landed on the floor of A-Block feet first after jumping from the second floor. (Doc. 35-1 at 2:01:08 or 14:01:08). This entire incident, from Plaintiff's cell door popping open to Plaintiff landing on the floor after jumping, occurred in less than thirty seconds. (Doc. 35-3 at 191:6–16); (Docs. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08); (Docs. 35-2 at 2:00:42–2:01:08 or 14:00:42–14:01:08).

**8.    Plaintiff is Transported to the Hospital and Released From Custody**

After the Plaintiff jumped from the second floor, a Code White for medical emergencies was called. (Doc. 35-3 at 95:11–19). Birmingham Fire and Rescue transported Plaintiff to the emergency room immediately after the incident. *Id.* at 98:9–19. Plaintiff was released from the custody of the Jefferson County Jail after this incident. *Id.* at 115:4–13.

---

[3] When material facts are captured by camera footage, the court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## STANDARD OF REVIEW

This District Court's denial of summary judgment is an immediately appealable collateral order because the decision denied the Appellant's motion for summary judgment based on qualified immunity. *See Barnett v. MacAurthur*, 715 F. App'x 894, 898 (11th Cir. 2017). This Court will "review de novo a district court's denial of summary judgment involving qualified immunity." *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992). The court will consider all the evidence in the light most favorable to the non-moving party. *Id.* at 341. However, Federal Rule of Civil Procedure 56(c) provides that summary judgment must be granted if there is "no genuine issue as to any material fact" and the moving party demonstrates it is "entitled to a judgment as a matter of law." *Id.*

## SUMMARY OF THE ARGUMENT

The District Court erred in denying Deputy Everett qualified immunity and summary judgment. In this case, to succeed, Appellee must establish that Deputy Everett violated Appellee's Fourteenth Amendment right by acting with deliberate indifference and that Appellee's right was clearly established.

This case involves a situation where Appellee was an inmate at the Jefferson County, Alabama, Jail, and she had been placed on suicide watch due to statements she made to jail personnel at intake. On February 8, 2023, Deputy Everett was on Appellee's cell block temporarily to escort another inmate. While Deputy Everett

8

was walking past Appellee's cell, Appellee told Deputy Everett (who had no prior dealings with or information about Appellee) that she (Appellee) had hit her head and needed medical attention. Deputy Everett observed an injury on Appellee's head. Deputy Everett called the jail's medical clinic, who requested Deputy Everett bring Appellee to the clinic. Deputy Everett unlocked Appellee's door from the control room and began walking back to Appellee's cell. Within seconds, Appellee burst out of her cell, ran to a second story, and jumped over the railing, injuring herself.

The facts and the law show that Deputy Everett did not act deliberately indifferent with regard to Appellee within the context of the prisoner's attempted suicide. Appellee's mere opportunity to attempt suicide is insufficient to hold Deputy Everett liable while performing her discretionary function as a deputy within the jail. Moreover, the controlling case law does not provide Deputy Everett with sufficient notice that her conduct would violate Appellee's right, even assuming (without conceding) there was a rights violation. As a result, Deputy Everett asks this Court to reverse the lower court's decision, grant Deputy Everett qualified immunity, and grant Deputy Everett summary judgment.

## ARGUMENT

Deputy Everett is entitled to qualified immunity and, thus, summary judgment. Here, the facts are not disputed, and Appellee failed to meet her burden

to show that Deputy Everett is not entitled to qualified immunity. Specifically, Appellee has failed to show Deputy Everett violated Appellee's rights or that, even if violated, Appellee's rights were clearly established. Therefore, Deputy Everett asks this Court to reverse the District Court's Opinion and Order and to grant summary judgment in Deputy Everett's favor.

## I.    **Deputy Everett is entitled to qualified immunity for her discretionary actions.**

The District Court's Opinion correctly recognized, and the parties agree, that Deputy Everett was acting within her discretionary authority on February 8, 2023. (Doc. 44 at 7); *cf. Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (official must prove she was performing a discretionary function to be entitled to qualified immunity). As a result, Appellee has the burden to overcome Deputy Everett's qualified immunity defense. *See Holloman*, 370 F.3d at 1264 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)). Qualified immunity "protects government officials performing discretionary functions from the burdens of civil trials and from liability." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1282 (11th Cir. 2008) (internal citations omitted). In that way, "[g]overnment officials are not required to err on the side of caution." *Marsh v. Butler County, Ala.*, 268 F.3d 1014 1030 n.8 (11th Cir. 2001). "Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly

incompetent or those who knowingly violate the law." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (internal citations omitted).

Deputy Everett can only lose the qualified immunity if her conduct violates a "clearly established statutory or constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). To overcome Deputy Everett's qualified immunity, Appellee must show: "(1) [Deputy Everett] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation" *Holloman*, 370 F.3d at 1264. The District Court improperly relied on certain cases, and the undisputed facts and controlling Eleventh Circuit case law confirm that Deputy Everett is entitled to qualified immunity. Because Appellee failed to satisfy both *Holloman* prongs, Appellee cannot overcome Deputy Everett's qualified immunity. *Id.*

## A.    Appellee failed to show any constitutional violation occurred.

To overcome Deputy Everett's qualified immunity, Appellee must first show that Deputy Everett violated a constitutional right. *See Holloman*, 370 F.3d at 1264. Deputy Everett is entitled to qualified immunity on Appellee's deliberate indifference claim under the "prisoner suicide theory" because Deputy Everett did not violate Appellee's constitutional right when Deputy Everett opened Appellee's cell door to get Appellee's requested medical help for a head injury Appellee received within her cell.

Where the facts are settled, the Court makes the legal determinations of qualified immunity and deliberate indifference. *Cf. Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty.").

"'In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the [Appellee] must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life.'" *Garner v. Jamerson*, No. 23-10130, 2023 U.S. App. LEXIS 19858, at *5–6 (11th Cir. Aug. 2, 2023) (emphasis added) (quoting *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015)). In *Garner*, a case cited in the District Court Opinion, the Eleventh Circuit held, "Our caselaw clearly established when the suicide occurred that, when an officer fails to protect an inmate who poses a serious risk of suicide and that failure amounts to deliberate indifference, the officer violates the prisoner's constitutional right. *Garner*, 2023 U.S. App. LEXIS 19858, at *7 (citing *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)).

"Failure to take measures to protect an inmate from committing suicide can only constitute deliberate indifference so long as it is a failure that goes beyond negligence or medical malpractice." *Freeman v. Lebedovych*, 186 F. App'x.

12

943, 944 (11th Cir. 2006) (emphasis added). Furthermore, Deputy Everett escapes liability for any known risks "if [Deputy] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). This Court's recent holding in *Wade v. McDade*, No. 21-14275, 2024 U.S. App. LEXIS 16880, at *3–4 (11th Cir. July 10, 2024) (en banc), which analyzed and applied *Farmer*, cleared confusion and clarified the requirements to establish a deliberate indifference claim.

Relying on *Farmer v. Brennan*, the *Wade* court confirmed the deliberate indifference standard and the sufficiently culpable state of mind to find that a defendant, like Deputy Everett, acted deliberately indifferent. *See Wade*, 2024 U.S. App. LEXIS 16880 at *7–8. To prove deliberate indifference, there is a three-part analysis of (a) whether the official was subjectively aware the inmate was at risk of serious harm, (b) showing the official disregarded that risk, and (c) the appropriate level of mental culpability. *See id.* at *8–9. This last subpart was the focus of the court, and to summarize the issue, the court questioned:

> Is it sufficient, as Wade contends, that the official knew that the inmate *faced* a substantial risk of serious harm, whatever its cause or origin? Or, as the state insists, must the inmate show instead that the official knew that his own conduct—his own acts or omissions—*caused* a substantial risk of serious harm to the inmate?

*Id.* at *14. The Court answered, "[W]e hold that a deliberate-indifference plaintiff must show that the defendant official was subjectively aware that his own conduct—

again, his own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* at *16. To summarize the deliberate indifference analysis:

> [T]he plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable . . ." if he "responded reasonably to the risk."

*Id.* at *26 (internal citations omitted) (quoting *Farmer*, 511 U.S. at 839, 844–45).

"[A] deliberate-indifference plaintiff must show that the defendant official was subjectively aware that his own conduct—again, his own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* at *16. "Pure 'inaction' cases—in which a deliberate-indifference defendant is alleged to have done literally *nothing*—will likely be few and far between." *Id.* at *21 n.1. Conduct characterized as negligent is insufficient to establish deliberate indifference. *See Schmeltz v. Monroe Cnty.,* 954 F.2d 1540, 1545 (11th Cir. 1992) ("The failure to remove the blanket and Koppin's two minute absence can be characterized at best as mere negligence. This is not enough for section 1983 liability."); *see also Davis v. Scherer,* 468 U.S. 183, 194, (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

14

Under this Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." *Cook v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (internal citations and quotations omitted). "The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Id.* Here, Appellee had a "mere opportunity" when her cell door opened prior to Deputy Everett arriving in A-Block to take Appellee to medical. *See* (Doc. 35-3 at 73:14–16, 74:9–11, 93:6-15, 130:12–20); (Doc. 35-4 at 28:2–6, 55:22–56:10); (Doc. 35-5 at 61:8–11). Deputy Everett (and the other deputies working) had no knowledge, or even an inclination or strong likelihood, that Appellee would exit her cell door, run up a flight of stairs and jump over the railing. *See, e.g.*, (Doc. 35-4 at 27:14–21). This is especially true given that Appellee requested medical help (not indicating potential self-harm) from Deputy Everett prior to jumping over the railing. (Doc. 35-3 at 46:12–17, 21–23).

"Case law indicates that a 'strong likelihood' of suicide does not exist . . . unless all of the following factors are present: (1) the inmate previously had threatened or attempted suicide; (2) that prior threat or attempt was known to the defendants; (3) the prior threat or attempt was somewhat recent; and, (4) the prior threat or attempt appeared genuine." *Greffey v. State of Ala. Dep't of Corr.*,

996 F. Supp. 1368, 1382 (N.D. Ala. 1998). Deputy Everett had no knowledge of Plaintiff attempting suicide, Appellee never previously attempted suicide while in the jail, and Appellee's actions up to that point did not create any genuine threat that Appellee may attempt suicide after having her cell door opened to be taken to the medical clinic by Deputy Everett.

Appellee simply had the opportunity to attempt suicide, nothing more, after she requested medical attention from Deputy Everett. This is insufficient to hold Deputy Everett liable under the deliberate indifference standard. Under the facts presented by deposition testimony and the video evidence, no *strong likelihood* existed that Appellee would attempt suicide once her cell door opened to be taken to the medical floor by Deputy Everett. *Cf. Gooden v. Mormon*, 524 F. App'x 593, 596 (11th Cir. 2013) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference.").

The evidence confirms that Appellee asked Deputy Everett for medical help, ran up the stairs after the cell door opened, jumped from the second-floor railing, and attempted to land on her feet. (Doc. 35-3 at 46:12–23, 76:19–78:10); (Doc. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08). Appellee did this only when presented with the opportunity when Appellee's cell door was opened to be taken to the medical floor by Deputy Everett after Appellee told Deputy Everett she needed

16

medical attention. (Doc. 35-3 at 76:19–78:10); (Doc. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08).

By contrast, in *Garner* the plaintiff alleged that the officers knew that plaintiff was on suicide watch and failed to observe the *Garner* plaintiff in a timely manner on the night of his death. *Id.* at \*2. The *Garner* allegations further stated that the officer defendants failed to observe the plaintiff until "long after he was already dead." *Id.*

*Garner* is distinguishable. Appellee informed Deputy Everett that she needed medical attention to get out of her cell. (Doc. 35-3 at 46:12–23). Deputy Everett attempted to help Appellee, but when Appellee's cell door opened, Appellee made her own decision to run up a flight of stairs and jump from the railing. (Doc. 35-3 at 76:19–78:10); (Doc. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08). Appellee notified Deputy Everett that she needed help for a head injury allegedly suffered in appellee's cell, and Deputy Everett immediately went to attempt to get Appellee medical attention by taking Appellee to the clinic. *Id.* at 46:12–23, 49:17–20, 63:14–20, 68:11–16. Further, Appellee received the requisite medical attention by Deputy Everett and the other deputies immediately after Appellee injured herself. *Id.* at 95:11–19, 98:9–19.

Similarly, the facts here cannot hold Deputy Everett liable for any alleged constitutional violation under *Wade*'s deliberate indifference standard. *See Jackson*

17

*v. West*, 787 F.3d 1345, 1357-59 (11th Cir. 2015) (reversing district court's denial of summary judgment for failure to prove that defendants were subjectively aware that the inmate would commit suicide). Deputy Everett did not act recklessly in a criminal sense because she hastily attempted to get medical aid for Appellee rather than ignore Appellee's condition. The facts before the Court are not similar to any controlling case law that attempted suicides by jumping off a rail are synonymous with failure to actively monitor an inmate's well-being, especially after an inmate requests to leave her cell for medical attention.

**B.    Deputy Everett did not violate "clearly established" law.**

Even if, *arguendo*, Deputy Everett had violated a constitutional right, Appellee failed to carry the other *Holloman* prong to overcome Deputy Everett's qualified immunity. Appellee must also show that her purported violated rights were "clearly established" at the time of the violation. *Holloman*, 370 F.3d at 1264. Appellee failed to show this violation was clearly established, and the District Court erred denying Deputy Everett summary judgment.

To satisfy the "clearly established" prong of the qualified immunity analysis, "[t]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale, Fla.*, 7 F.3d 1552, 1557 (11th Cir. 1993) (internal citations omitted). Appellee "cannot rely on

'general, conclusory allegations' or 'broad legal truisms.'" *Id.* (internal citations omitted). Appellee must show that a preexisting precedential case[4] clearly addressed the challenged conduct at hand since "officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (citations omitted). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (internal quotations omitted).

The Court has identified three ways in which the law can give an official, such as Deputy Everett, fair notice that their conduct is unconstitutional. *See Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, the Appellee may show that a materially similar case has already been decided. *Id.* at 1255 (citation omitted). Second, the Appellee can point to a broader, clearly established principle that should control the novel facts of the situation. *Id.* (citation omitted). Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. *Id.* "The second and third methods are generally known as 'obvious

---

[4] Only cases from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Alabama Supreme Court can "clearly establish" Defendant's constitutional obligations. *See, e.g., Jenkins by Hall v. Talladega City, Ala., Bd. of Educ.*, 115 F.3d 821, 827 n. 4 (11th Cir. 1997) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

clarity' cases [, but . . . c]ases do not often arise under the second and third methods." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (internal citations omitted). A plaintiff must often use the first method, which does not require a case to be "directly on point," but must be close enough to have put "the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "If reasonable people can differ on the lawfulness of a government official's actions despite existing case law, he did not have fair warning and is entitled to qualified immunity." *Gaines*, 871 F.3d at 1209 (internal citations omitted).

Appellee cannot cite to any preexisting case from the United States Supreme Court, this Court, or the Alabama Supreme Court that "clearly establishe[s]" that Deputy Everett's actions were unlawful or unconstitutional. Specifically, there is no preexisting case holding unconstitutional a correctional officer's or prison official's opening a cell door from the control room to take an inmate to the medical floor once the inmate requested medical attention for a head injury. That is a fatal flaw to Appellee's claims because "[t]o be clearly established . . . 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citations omitted).

The factual circumstances here are similar to those in *Jacobs v. Ford*, No. 21-13411, 2022 U.S. App. LEXIS 10265 (11th Cir. Apr. 15, 2022). In *Jacobs,* the district court granted the defendant officers' motion to dismiss on an attempted suicide claim, which this Court affirmed:

20

Jacobs alleged in his second amended complaint that, "based on the March 7, 2019 Inmate Welfare Questionnaire," Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller each "knew and/or but for the reckless disregard and deliberate indifference to his civil rights would have known that [Jacobs] was suicidal and that there was a strong likelihood that [Jacobs] would attempt suicide." These allegations are "naked assertions devoid of further factual enhancement" that cannot save Jacobs's claims from dismissal. See [*Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009)] (quotation omitted and alteration adopted); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."). Rote allegations aside, Jacobs's second amended complaint pleaded no facts indicating that Officer Cunigan, Officer Nelson, Deputy Brown, or EMT Miller even knew about the March 7 questionnaire or knew what it said when they came into contact with Jacobs on May 2.

*Id.* at *11–12 (last alteration in original).

Additionally, the Eighth Circuit recently analyzed a similar fact pattern and held that an inmate jumping off a second-floor terrace was not a constitutional violation. *See generally Brabbit v. Capra*, 59 F.4th 349 (8th Cir. 2023). In *Brabbit*, the inmate stood up, ran past another inmate, removed his sandals, and proceeded quickly up the stairs toward the second floor with a pencil in his nose and proceeded to scale the staircase banister and climbed outside of the protective barrier on the second floor. *Id.* at 353. Over three minutes passed after the *Brabbit* inmate jumped over the protective barrier prior to jumping headfirst, landing on the concrete floor. *Id.*

Other circuits have held similarly as the Eighth Circuit on inmate suicides and attempted suicides, and these circuits have found that the deputies or officers were not deliberately indifferent when an inmate attempted or committed suicide. *See Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 724–25 (6th Cir. 2020) (no deliberate indifference where detainee committed suicide because detainee did not demonstrate strong likelihood of committing suicide); *DePaola v. Clarke*, 884 F.3d 481, 488 (4th Cir. 2018) (no deliberate indifference where prisoner attempted suicide because particular prison officials did not have sufficient knowledge of prisoner's mental illness); *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (no deliberate indifference where prisoner committed suicide because prison officer had no personal interaction with detainee or direct and contemporaneous knowledge of detainee's mental health treatment).

This Court, as cited in the Opinion, has held that jailers who either did not know of any of the inmate's past suicide attempts, or who knew of only one past attempt at an unspecified time, did not display deliberate indifference by failing to take suicide precautions, even though the inmate displayed erratic and disruptive behavior. *Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1265–69 (11th Cir. 2005). In contrast, a jailer who heard of an inmate's suicide attempt in the month prior to his demise, and acknowledged the inmate's suicidal tendency to her family, reflected a triable issue as to deliberate indifference. *Id.* at 1270.

22

In *Snow*, this Court held that the following facts established deliberate indifference to an inmate's risk of suicide: (1) the defendant officer telephoned another correctional institution, and a jailor told him that within the last month, the inmate had "given them a lot of trouble" and tried to cut her wrist; (2) the defendant officer observed the inmate beat on her cell door, climb on the sink in her cell, charge at the officer, beat on the cell window, and attempt to hit the officer; (3) the defendant officer told the inmate's parents that the inmate was suicidal; (4) the defendant officer went off duty without communicating to anyone else at the jail his belief that the inmate was a strong suicide risk; and (5) despite the defendant officer's belief that the inmate was a strong suicide risk, the officer admitted he did not monitor the inmate as if she were suicidal, which would have included visual checks every fifteen minutes and removal of items from her cell with which she could have harmed herself, nor did officer return the inmate to the hospital from which she had been released into the police custody. *Id.* at 1266–67, 1270.

In contrast, Deputy Everett's actions did not rise to the level of deliberate indifference. *See Hobson v. Bibb Cnty., Ala. Comm'n*, No. 7:07-CV-00502-LSC, 2008 U.S. Dist. LEXIS 143555, at *26 (N.D. Ala. Mar. 5, 2008) (distinguishing the facts in *Snow* and granting dismissal in favor of defendants). Here, Deputy Everett had no prior interactions with Appellee and Appellee had not acted in any way on February 8, 2023, that would have put Deputy Everett (or the other deputies) on alert

that there was a strong likelihood that Appellee would run up a flight of stairs and jump over the railing after her cell door was opened to go to the medical clinic. Therefore, *Snow* does not clearly establish the law as to Deputy Everett's conduct.

The District Court also improperly relied on *Turner v. Phillips*, 547 F. Supp. 3d 1188 (N.D. Ala. 2021), and *Cole v. Jones*, No. 2:21-CV-26-RAH-KFP, 2024 U.S. Dist. LEXIS 44456 (M.D. Ala. Mar. 13, 2024), in determining that Appellee met her burden to overcome Deputy Everett's qualified immunity. (Doc. 44 at 10). The holding in *Turner* supports Deputy Everett's argument that she is entitled to summary judgment. In *Turner*, the district court found that the nurse and other individual jail workers were entitled to summary judgment. *Id.* at 1201–03. The *Turner* nurse, similar to Deputy Everett, had minimal prior interactions with the plaintiff, and simply knowing that an individual is on suicide watch "does not show a strong likelihood that [Appellee] would [attempt] suicide when [she] did." *Id.* at 1201-02 (citing *Salter v. Mitchell*, 711 F. App'x 530 (11th Cir. 2017)).

Further, the District Court incorrectly applied the holding in *Cole v. Jones* in comparing Deputy Everett's actions to an officer who gave an inmate a razor. *See* (Doc. 44 at 10, 12, 18). The District Court found, "In the court's view, there is little difference between allowing a suicidal inmate 23 seconds of access to a razor or a rope and Everett's conscious decision here to allow Plaintiff 23 seconds of unsupervised access to a staircase leading up to the second floor." *Id.* at 18. Deputy

24

Everett did not give Appellee a razor or any other object to commit suicide, and giving a razor blade to a suicidal inmate is patently different that a deputy opening a cell door for inmate that has requested medical attention. Accordingly, the District Court incorrectly found that the *Cole* holding "clearly established" that Deputy Everett's actions violated Appellee's constitutional rights.

The District Court's reliance on *Allen v. Freeman*, No. CV 110-022, 2013 U.S. Dist. LEXIS 93685 (S.D. Ga. July 3, 2013), also fails to "clearly establish" that Deputy Everett violated Appellee's constitutional rights. (Doc. 44 at 12). In *Allen*, the plaintiff had tied a sheet to a shower door support bar and the defendants saw that plaintiff tied the sheet to the door. *Allen*, 2013 U.S. Dist. LEXIS 93685 at *33– 34. The *Allen* district court determined that in the 'jail setting and at that specific location, a tied down-sheet is an obvious instrument of suicide." *Id.* at *34.

Similarly, *Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990), fails to put Deputy Everett on any notice that her actions on February 8, 2023, would have violated any of Appellee's clearly established constitutional rights. In *Greason,* this Court addressed the issue of "grossly inadequate psychiatric care" provided by a medial professional within a jail. *Id.* at 835. Therefore, this case in applicable to Deputy Everett's actions and insufficient to put Deputy Everett on any notice of clearly established law because Deputy Everrett was not the responsible person for

25

diagnosing Appellee's suicidal medical condition and was not responsible for providing any psychiatric medical care to Appellee.

Finally, Appellee's reliance on *Dolihite v. Maughon by and Through Videon*, 74 F.3d 1027 (11th Cir. 1996) in the MSJ Opposition also failed to put Deputy Everett on any notice that her actions would have violated any of Appellee's clearly established constitutional rights. In *Dolihite*, the jailer who was denied summary judgment on appeal had knowledge of a previous suicide attempt, an attempted hanging, and took the inmate off personal observation two days later. *Id* at 1043. These facts are entirely different from Deputy Everett's having no knowledge of previous suicide attempts by Appellee (because there were none) and Deputy Everett attempting get Appellee medical care after Appellee asked for medical help from Deputy Everett. Therefore, this Court should grant Deputy Everett qualified immunity for the contrasting reasons the *Dolihite* court reversed summary judgment. *See id.* at 1043.

This incident was Appellee's first alleged attempt at suicide while in the Jefferson County Jail. Appellee exited her cell, ran up the stairs and jumped off the railing in less than thirty seconds and Appellee jumped feet-first from the second floor. (Doc. 35-3 at 76:19–78:10); (Doc. 35-1 at 2:00:42–2:01:08 or 14:00:42–14:01:08). Deputy Everett was not assigned to Appellee's fifth floor level and cell block on February 8, 2023, and Deputy Everett was not the responsible individual

26

for monitoring Appellee's actions on February 8, 2023. (Doc. 35-3 at 118:20-22); (Doc. 35-5 at 75:21–76:11). Even if Deputy Everett had been the responsible party for monitoring Appellee (and she was not), Deputy Morgan, Deputy Yunker, and CRO Lovell confirm that Appellee was not acting in any way to put Deputy Everett (or these other deputies) on any notice that Appellee would have a strong likelihood of attempting suicide after requesting medical help for an alleged head injury. (Doc. 35-4 at 27:14–21, 33:16–20); (Doc. 35-6 at 51:13–16, 62:20–63:3); (Doc. 35-5 at 22:14–23:7, 73:17–21).Therefore, the District Court incorrectly held that Appellee satisfied her burden, and Deputy Everett is entitled to qualified immunity and summary judgment.

## CONCLUSION

The District Court erred when it denied Deputy Everett's motion for summary judgment on the basis of qualified immunity. Based on the authorities cited and arguments presented herein, this Court should (i) reverse the District Court's Opinion and Order; (ii) grant summary judgment in favor Deputy Everett based on her qualified immunity; and (iii) grant Deputy Everett such further and different relief which she may be entitled.

/s/ Robert J. Sewell
JOHN G. DANA, Esq.
JONATHAN D. GILBERT, Esq.
ROBERT J. SEWELL, Esq.
CLAYTON M. HUGHES, Esq.
*Attorneys for Appellant, Deputy Monica Everett*

**OF COUNSEL:**
GORDON, DANA & GILMORE, LLC
600 University Park Place, Suite 100
Birmingham, Alabama 35209
Telephone: (205) 874-7950
Facsimile: (205) 874-7960
jdana@gattorney.com
jdgilbert@gattorney.com
jsewell@gattorney.com
chughes@gattorney.com

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the limitations set forth in Fed. R. App. P. 32(a)(7) and the type-volume limitation. This brief contains 6,617 words per the word count function on counsel's word processing software.

*/s/ Robert J. Sewell*
OF COUNSEL

## CERTIFICATE OF SERVICE

I certify that on September 11, 2024, I filed the foregoing electronically with the Clerk of Court using the CM/ECF filing system, which will serve all counsel of record. *See* 11th Cir. R. 31-3.

*/s/ Robert J. Sewell*
OF COUNSEL